IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SAFIYA HIGH,                          )
                                      )
              Plaintiff,              )
                                      )
       v.                             )          1:15CV554
                                      )
R&R TRANSPORTATION, INC.              )
                                      )
              Defendant.              )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action on January 11, 2016 against her former employer, R&R

Transportation, Inc. ("R&R" or "Defendant"), alleging sex discrimination, sexual harassment,

retaliation and wrongful termination in violation of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), as

well as breach of contract.[1]  Before the Court is Defendant's Motion for Summary Judgment.

(ECF No. 42.)  For the reasons set forth below, Defendant's motion will be granted in part

and denied in part.

## I.    BACKGROUND

R&R is a transportation company located in Greensboro, North Carolina.  (ECF No.

42-1 ¶ 2.)  Karl Robinson is the owner and President of the company.  (*Id.* ¶ 1.)  The company

employs several of his family members including: (i) Allen Robinson, his brother and Vice

---

[1] Plaintiff's Second Amended Complaint also included as its fifth and sixth claims for relief, Unlawful
Discrimination Based on Pay Discrimination and Unlawful Discrimination Based on Constructive
Discharge.  (ECF No. 34 at 46–47.)  The parties subsequently filed a Stipulation of Partial Dismissal
With Prejudice on August 12, 2016, dismissing these two claims.  (ECF No. 40.)

President, who served as Plaintiff's supervisor, (ECF No. 34 ¶ 24; ECF No. 42-1 ¶ 3; ECF No. 48-2 at 17:18–20); (ii) LaShelle Robinson Spinks, his daughter, who works in the office and manages R&R's administration, (ECF No. 42-1 ¶ 3; ECF No. 34 ¶ 12); and (iii) Harrold Thornton Dennis Robinson ("Dennis Robinson"), his cousin, who "perform[s] maintenance on the [company] vehicles," (ECF No. 42-1 ¶ 4).

Plaintiff was employed by R&R, as an Administrative Assistant, from September 2, 2014 until March 2, 2015. (ECF No. 34 ¶¶ 21, 151; ECF No. 34-28.) R&R, at the time, had 16 employees, (ECF No. 34-8), two of whom – Plaintiff and LaShelle Robinson Spinks – were the only female employees, (ECF No. 34 ¶ 12; ECF No. 35 ¶ 12). Plaintiff alleges that, while employed at R&R, she was subjected to sexually harassing conduct. (*See* ECF No. 34 ¶¶ 174–182.) Plaintiff filed three (3) Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF Nos. 48-13, 48-14, 48-15.) Plaintiff filed the first charge ("Charge 1") on February 24, 2015, alleging discrimination based on sex and retaliation, and stating, among other things, that "[f]rom the outset of my employment I've been sexually harassed by a male coworker."[2] (ECF No. 48-13 at 2.) Plaintiff also alleged in Charge 1 that after reporting the harassing behavior to her supervisor, R&R's Vice President, the harassment ceased, but later resumed. (*Id.*) Plaintiff then "escalated" her complaints to the President "and the harassment stopped." (*Id.*)

The day after Plaintiff filed Charge 1, on February 25, 2015, she sent an email to Karl Robinson stating that she was "giving [her] two week notice." (ECF No. 34-24 at 1.) Karl

---

[2] Plaintiff has identified the "male co-worker" referenced in the Charge 1 as Dennis Robinson. (ECF No. 43 at 90:10–14; 92:10–19.)

Robinson met with Plaintiff nearly a week later, on March 2, 2015, to discuss her resignation notice. (ECF No. 36-26; ECF No. 42-1 ¶ 7; ECF No. 34 ¶ 151.) During that meeting, Karl Robinson told Plaintiff that it was not necessary to give two weeks' notice, and asked Plaintiff to sign R&R's Separation of Employment form. (ECF No. 42-1 ¶ 7; ECF No. 34-28; ECF No. 34 ¶ 151.) Plaintiff refused to sign the form, gathered her belongings, and left R&R's facility. (*Id.*)

A few days later, on March 5, 2015, Plaintiff filed a second EEOC charge ("Charge 2") alleging sexual harassment and claiming that she was discharged in retaliation for having filed Charge 1. (ECF No. 48-14 at 1.) Nearly a month later, on March 30, 2015, Plaintiff filed a third EEOC charge ("Charge 3"), in which she alleged discrimination based on sex. (ECF No. 48-15 at 3.) Plaintiff also alleged, among other things, in Charge 3, that she was "sexually harassed by two . . . male coworkers"[3] and the "sexual harassment did not stop following . . . complaints to management, as I suggested in my previous charge, and the fact that a second male coworker was also sexually harassing me was not brought up because I'd forgotten." (*Id.*) Ultimately, the EEOC dismissed Plaintiff's three charges and issued a Notice of Right to Sue for each charge. (ECF Nos. 34-1, 34-2, 34-3.) Plaintiff then filed the instant lawsuit seeking compensatory and punitive damages. (ECF No. 34 at 48–49.) R&R has moved for summary judgment "on every claim asserted by Plaintiff." (ECF No. 42 at 1.)

---

[3] Plaintiff has identified the second male co-worker referenced in Charge 3 as Stacy Wilcox, an R&R employee hired in December 2014. (*See* ECF No. 47 at 5 n.2 (citing ECF No. 43 at 360:5–11; ECF No. 34 ¶¶ 75, 77–79).)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 324. When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case." *Celotex Corp.*, 477 U.S. at 323.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring

4

the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## III.    DISCUSSION

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Before a plaintiff files suit under Title VII, she must exhaust her administrative remedies by, first, filing a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). A plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over the claim. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

### A.    Exhaustion of Administrative Remedies

R&R argues that Plaintiff failed to exhaust her administrative remedies and thus, should be limited only to the specific factual allegations recited in her EEOC charges. (ECF No. 47 at 9, 11.) Plaintiff argues that her Title VII claims are not barred because "it is clear that Plaintiff has met her burden of exhausting her administrative remedies." (ECF No. 48 at 10.)

When an action is filed alleging Title VII violations, the EEOC charge "defines the scope of [plaintiff's] subsequent right to institute a civil suit" in federal court. *First Union Nat'l*

5

*Bank*, 202 F.3d at 247. The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b), such that a claimant's "employer is put on notice of the alleged violations," *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). The scope of a plaintiff's Title VII lawsuit, however, is not strictly limited only to those discrimination claims expressly stated in the EEOC charge. *See Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). Discrimination claims reasonably related to the charge, and those developed by reasonable investigation of the charge can also be asserted in a subsequent lawsuit in federal court. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

Generally, a claim in a plaintiff's civil suit will be barred if: (i) the charge alleges one basis of discrimination (e.g., sex) and the complaint alleges a different basis of discrimination (e.g., race), *see Jones*, 551 F.3d at 300; (ii) the charge alleges one type of discrimination, (e.g., failure to promote) and the complaint alleges a different type of discrimination (e.g., discrimination in pay and benefits), *see Chacko v. Patuxent Inst.,* 429 F.3d 505, 509 (4th Cir. 2005); or (iii) the charge "reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in [the] formal suit," *id.* at 506. Because "lawyers do not typically complete the [EEOC] administrative charges, . . . courts construe them liberally." *Id.* at 509. As explained by the Fourth Circuit, while important, "the exhaustion requirement should not become a tripwire for hapless plaintiffs [and] we may not erect insurmountable barriers to litigation out of overly technical concerns." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012). Essentially, the Court must seek "to strike a balance between

6

providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor*, 681 F.3d at 594.

R&R primarily relies on *Chacko v. Patuxent Inst.,* 429 F.3d 505 (4th Cir. 2005), to support its argument that Plaintiff failed to exhaust her administrative remedies. In that case, the plaintiff's administrative charges alleged specific instances of harassment by his supervisors and made no mention of harassment by co-workers nor the use of racial epithets. *See Chacko*, 429 F.3d at 507. At trial, however, the bulk of plaintiff's evidence centered on co-worker harassment, spanning 20 years, including the use of racial epithets against plaintiff. *Id.* at 508. The Fourth Circuit concluded that "the administrative charges and the evidence at trial describe two different cases [which] is precisely the sort of disjunction that the administrative complaint process is designed to avoid." *Id.* at 512.

Here, Plaintiff's EEOC charges essentially allege, among other things, that:

(i)    she was sexually harassed by a male co-worker "[f]rom the outset of [her] employment," (ECF No. 48-13 at 2; *see* ECF No. 48-14 at 1);

(ii)   she was sexually harassed by two male co-workers, (ECF No. 48-15 at 3);

(iii)  the sexual harassment by a male coworker "consisted of him propositioning [her] to date him," (ECF No. 48-13 at 2);

(iv)   a male coworker tried to kiss her and asked her for a kiss, (*id.*);

(v)    a male coworker "attempt[ed] to place [her] arm around his shoulders," (*id.*); and

(vi)   a male coworker "improperly touch[ed]" her arm and waist, (*id.*)

The allegations in Plaintiff's Second Amended Complaint ("Complaint") include, among other things, that:

> (i)     Dennis Robinson told Plaintiff that he was interested in her and, on more than one occasion, he told Plaintiff that he wanted to take her out and be in a relationship with Plaintiff, (ECF No. 34 ¶¶ 35, 38, 40, 41, 59, 61, 64);
>
> (ii)    Stacy Wilcox asked Plaintiff out on a date on more than one occasion, (*id.* ¶¶ 75, 78, 84);
>
> (iii)   Dennis Robinson "rubb[ed] Plaintiff's right arm up and down with his hand," (*id.* ¶ 39);
>
> (iv)    Dennis Robinson told Plaintiff "to lean over and give him a kiss grabbing Plaintiff around the waist towards him," (*id.*);
>
> (v)     Dennis Robinson rubbed the left side of Plaintiff's face, (*id.* ¶ 42);
>
> (vi)    Dennis Robinson grabbed Plaintiff's stomach from behind, "saying he couldn't resist seeing Plaintiff's budge [sic] in her shirt from being fat," (*id.*);
>
> (vii)   Dennis Robinson hit Plaintiff on her butt on more than one occasion, (*id.* ¶¶ 43, 61, 64); and
>
> (viii)  Dennis Robinson grabbed Plaintiff's right breast, (*id.* ¶ 45).

The Court finds that the above allegations in Plaintiff's Complaint are reasonably related to, and would likely follow from, a reasonable investigation of Plaintiff's EEOC charges regarding alleged sexual harassment by Dennis Robinson and Stacy Wilcox, despite the fact that the co-workers were first named in the Complaint. Unlike in *Chacko*, where

plaintiff's evidence at trial involved different parties (*i.e.*, co-workers instead of supervisors) and significantly different conduct, such is not the case here. The Court concludes that Plaintiff has exhausted her administrative remedies with respect to claims of sexual harassment by Dennis Robinson and Stacy Wilcox, and the Court, therefore, has subject matter jurisdiction over claims arising from their conduct.

Next, Plaintiff alleged in each of her charges that she reported the alleged sexual harassment to R&R management. However, in Charge 1, Plaintiff alleged that the conduct stopped, (ECF No. 48-13 at 2), and in Charge 3 she stated that management "did nothing," (ECF No. 48-15 at 3). The Complaint similarly alleges that:

> (i)     on more than one occasion, Plaintiff complained to her supervisor, Allen Robinson, that Dennis Robinson had repeatedly asked her to be in a relationship and had touched her "in an inappropriate way," and Allen Robinson told Plaintiff that he would speak with Dennis Robinson about Plaintiff's complaint, (ECF No. 34 ¶ 41, 43, 67);

> (ii)    Plaintiff told Allen Robinson "to tell Stacy [Wilcox] stop asking her out" but Allen Robinson "told Plaintiff there was nothing he could say," (*id.* ¶ 76); and

> (iii)   Plaintiff complained to the company's President, Karl Robinson, about Dennis Robinson's "advances towards her" and although Karl Robinson told Plaintiff that he would further discuss the situation with her, he failed to do so, (*id.* ¶¶ 115–16).

The Court finds that these allegations in Plaintiff's Complaint are reasonably related to allegations in Plaintiff's EEOC charges. Although the EEOC charges are not as detailed as

9

the allegations in the Complaint and some statements appear inconsistent,[4] the charges are nonetheless sufficient to put R&R on notice of the claims against it. *See Sydnor*, 681 F.3d at 594 (explaining that "untrained parties [need not] provide a detailed essay to the EEOC in order to exhaust their administrative remedies"). To limit Plaintiff's factual allegations in this lawsuit to only those specifically recited in the EEOC charges, at the exclusion of reasonably related allegations of similar conduct by the same actors, "would eviscerate some of the protections Title VII was designed to provide." *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 626 (E.D. Va. 2011).

Construing Plaintiff's EEOC charges liberally, as we must at this stage, the Court concludes that Plaintiff has exhausted her administrative remedies with respect to her claim that she complained to R&R management, thus putting them on notice. The Court, therefore, has subject matter jurisdiction over the claims arising from this conduct.

Finally, on the issue of exhaustion of administrative remedies,[5] Plaintiff's Complaint includes numerous allegations that have nothing to do with her EEOC charges, as well as allegations of alleged harassing conduct by additional persons, not previously identified in the

---

[4] Plaintiff contends that Charge 3 was "submitted in order to amend her earlier EEOC charges." (ECF No. 48 at 14.) Under the applicable regulations, "[a] charge may be amended to cure technical defects or omissions, including . . . to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

[5] The parties do not contest that Plaintiff has exhausted her administrative remedies with respect to the retaliation and wrongful termination claims.

EEOC charges.  As to these additional persons, Plaintiff's Complaint alleges, among other things, that:

    (i)    Allen Robinson discussed his personal life and topics of a sexual nature in the office, including "his involvement with different women before his wife," (ECF No. 34 ¶ 26);

    (ii)    Dennis Robinson and Allen Robinson watched a sexually explicit music video, titled "Anaconda" by Nicki Minaj, on a work computer, in which "half naked females with short shorts [were] shaking their butt[s]," (*id.* ¶¶ 32–33);

    (iii)    Allen Robinson showed Plaintiff pornographic pictures on his cellular phone, (*id.* ¶¶ 86, 103);

    (iv)    Karl Robinson pointed a gun at Plaintiff, (*id.* ¶ 108);

    (v)    a computer repairman, identified as "Keith", made a sexually inappropriate comment to Plaintiff, (*id.* ¶ 104); and

    (vi)    an unidentified job applicant asked Plaintiff to go out on a date, (*id.* ¶¶ 87, 94).

As argued by R&R, neither these allegations, nor any allegations to which these claims would be reasonably related, are set forth in Plaintiff's EEOC charges.  Although the Court is required to construe Plaintiff's EEOC charges liberally, the Court is not "at liberty to read into administrative charges allegations they do not contain."  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).  Because the EEOC charges make no mention of Plaintiff having been subjected to harassment by Allen Robinson, Karl Robinson, or any other individual at R&R, these allegations in the Complaint constitute different conduct, involving different actors, which clearly fall outside the purview of claims articulated in Plaintiff's EEOC

charges. Thus, with respect to any claims arising from this alleged conduct, Plaintiff has failed to exhaust her administrative remedies. *See Chacko*, 429 F.3d at 506 (holding "that a plaintiff fails to exhaust [her] administrative remedies where, as here, [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit").

The Court, therefore, lacks subject matter jurisdiction over any claims arising from this alleged conduct. Accordingly, the Court will grant R&R's motion for summary judgment with respect to claims involving sexual harassment by individuals named in the Complaint, other than Dennis Robinson and Stacy Wilcox.

## B. Discrimination Based on Sex and Hostile Work Environment (Claims 1 and 2)

"Title VII creates a hostile working environment cause of action." *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001). A plaintiff may bring suit against an employer when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). To establish a claim for hostile work environment based on sexual harassment, a plaintiff must show that a reasonable jury could find "that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc). Here, the parties' dispute is related to the third and fourth elements necessary to establish the claim. Specifically, R&R argues that it is entitled to summary judgment on this claim because:

(i) Plaintiff cannot show that the conduct complained of was sufficiently severe or pervasive to create a hostile work environment; and (ii) the harassing conduct is not imputable to R&R which took remedial action to end the harassment. (ECF No. 47 at 12–16.)

### 1. _Severe or pervasive conduct_[6]

The determination of whether conduct is severe or pervasive is both subjective and objective. _EEOC v. Cent. Wholesalers, Inc._, 573 F.3d 167, 175 (4th Cir. 2009). As such, a plaintiff "must show that [she] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." _Id._ Although a plaintiff may subjectively believe that the offending conduct created a hostile work environment, "[c]onduct that is not severe or pervasive enough to create an _objectively_ hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." _Harris_, 510 U.S. at 21 (emphasis added). To determine whether harassment is sufficiently severe or pervasive to create an objectively hostile and abusive work environment, courts must consider the totality of the circumstances including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." _First Union Nat'l Bank_, 202 F.3d at 242. Such a determination, however, "is not, and by its nature cannot be, a mathematically precise test." _Harris_, 510 U.S. at 22.

---

[6] In light of the Court's determination that Plaintiff has exhausted her administrative remedies as to her allegations against Dennis Robinson and Stacy Wilcox, the Court will focus its analysis here on the allegedly harassing conduct of these parties.

In this case, Plaintiff's evidence of harassing conduct by Dennis Robinson includes the following:

 (i) Dennis Robinson asking Plaintiff to date him, despite her repeated refusals, (ECF No. 48-5 ¶¶ 10, 21);

 (ii) Dennis Robinson's grabbing of Plaintiff around her waist, caressing one side of Plaintiff's face with his hand, and attempting to kiss Plaintiff, (*id.* ¶¶ 12, 14; ECF No. 43 at 114:12–116:18);

 (iii) Dennis Robinson's grabbing of Plaintiff's stomach from behind, while stating that he "couldn't resist seeing the bulge in [Plaintiff's] shirt," (ECF No. 48-5 ¶ 14);

 (iv) Plaintiff being hit on her butt by Dennis Robinson, (*id.* ¶¶ 15, 21; ECF No. 43 at 173:18–174:7);

 (v) Dennis Robinson's squeezing of Plaintiff's right breast, (ECF No. 48-5 ¶ 16; ECF No. 43 at 178:22–25); and

 (vi) Dennis Robinson having laughed loudly at Plaintiff as she was attempting to complete her work, (ECF No. 48-5 ¶ 32; ECF No. 43 at 101:8–19).

Plaintiff's evidence of harassing conduct by Stacy Wilcox[7] includes the following:

 (i) Stacy Wilcox writing his telephone number on a piece of paper and giving it to Plaintiff, "saying that he was a nice guy and to give him a try," (*id.* ¶ 27); and

---

[7] Plaintiff argues in her response brief that Stacy Wilcox's harassment also included referring to her as "beautiful" and saying that he "would not mind taking her out." (ECF No. 48 at 6 (quoting ECF No. 48-5 ¶ 27).) However, despite this argument, Plaintiff testified in her deposition that she was *not* harassed when Stacy Wilcox called her "beautiful" and said that he wanted to take her out. (*See* ECF No. 43 at 315:17–22.)

(ii)    Stacy Wilcox telling Plaintiff that he has her telephone number and asking to take her out on a date on more than one occasion, (*id.* ¶¶ 28, 29; ECF No. 43 at 36:19–37:1, 319:1–320:10).

At this stage of litigation, the role of the Court is not to weigh the evidence, but rather to determine whether, based on the evidence presented, a reasonable jury could find the alleged conduct to be sufficiently severe or pervasive to constitute a hostile work environment. *See Liberty Lobby, Inc.*, 477 U.S. at 249; *see also Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989) (stating that a determination of whether the alleged harassment was sufficiently severe or pervasive to create a hostile work environment is "quintessentially a question of fact" for the jury), *rev'd in part on other grounds*, 900 F.2d 27 (4th Cir. 1990) (en banc). The Court concludes that, viewed in the light most favorable to the nonmoving party, Plaintiff has proffered sufficient evidence to create a genuine dispute as to this element of Plaintiff's Title VII hostile work environment claim, only as it relates to the conduct of Dennis Robinson.

With respect to Stacy Wilcox, the Court finds that the alleged harassment falls woefully short of conduct that can be characterized as objectively severe or pervasive. Thus, the Court will grant Defendant's motion for summary judgment as it relates to any claims arising from the conduct of Stacy Wilcox. *See Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (affirming district court's grant of summary judgment and explaining that, although determination of whether harassment was sufficiently severe or pervasive is a question of fact for the jury, where plaintiff's evidence, taken as true, is "so trivial, so isolated, and so far from the paradigmatic case of sexual harassment, . . . summary judgment [is] clearly appropriate").

## 2. *Conduct imputable to employer*

R&R may be held liable in negligence if Plaintiff shows that R&R "knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 333–34. Knowledge of co-worker harassment, as alleged here, may be imputed to an employer if a "reasonable employer, intent on complying with Title VII," would have known about the harassment to which the plaintiff is subjected. *Spicer v. Commonwealth of Va., Dep't of Corrs.*, 66 F.3d 705, 710 (4th Cir. 1995). An employee may not, however, "impute liability on an employer under a theory that the employer must exercise an all-seeing omnipresence over the workplace." *Howard v. Winter*, 446 F.3d 559, 567 (4th Cir. 2006).

An employer may, however, "be charged with constructive knowledge of coworker harassment when it fails to provide reasonable procedures for victims to register complaints." *Ocheltree*, 335 F.3d. at 334. Thus, "[a]n employer's adoption of an effective anti-harassment policy is an important factor in determining whether it exercised reasonable care to prevent any sexually harassing behavior." *First Union Nat'l Bank*, 202 F.3d at 244. Here, the parties seemingly do not dispute that R&R had a "Policy Against Workplace Harassment" which prohibited "sexual advances . . . or other physical or verbal conduct of a sexual nature." (ECF No. 34-10 at 6–7.) R&R's policy also provided that any such incident of harassment should be reported "immediately to your supervisor *or* to the President." (ECF No. 34-10 at 9 (emphasis added).)

R&R argues that the allegedly harassing conduct at issue is not imputable to it because, in accordance with its policy, "R&R responded to Plaintiff's complaints about Dennis Robinson by taking remedial action reasonably calculated to end the harassment." (ECF No.

16

47 at 15.) However, Plaintiff's evidence reflects that, at least on four (4) occasions between September 2014 and January 2015, she reported the harassing conduct to her supervisor, Allen Robinson, who failed to address or end the ongoing harassment. (ECF No. 48-5 ¶¶ 11, 13, 15, 22; ECF No. 43 at 191:20–192:12, 196:13–17; ECF No. 48-15 at 3.) Plaintiff's evidence also shows that Plaintiff eventually complained to R&R's President, Karl Robinson, who also failed to take corrective action.[8] (ECF No. 43 at 210:25–213:9; ECF No. 48-15 at 3.)

Thus, viewing the evidence in the light most favorable to the Plaintiff, the Court finds that a genuine dispute exists as to whether there is a basis for imputing liability to R&R for Dennis Robinson's allegedly harassing conduct. Specifically, a determination of whether R&R management acted, whether such actions were reasonably calculated to end such conduct, or whether R&R management failed to act in response to Plaintiff's complaints about Dennis Robinson's allegedly harassing conduct, are questions of fact for the jury.

Because the Court concludes that a reasonable jury could find that the alleged harassment by Dennis Robinson was severe or pervasive, and that such conduct may be a basis for imputing liability to Plaintiff's employer, Defendant's motion for summary judgment on Plaintiff's claims of discrimination based on sex and hostile work environment based on sexual harassment will be denied, as it relates to the alleged harassing conduct by Dennis Robinson.

---

[8] Defendant argues that, in Plaintiff's First EEOC Charge, she states that upon escalating her complaints to Karl Robinson, "the harassment stopped." (ECF No. 47 at 15 (quoting ECF No. 48-13 at 2).) However, Plaintiff's Third EEOC Charge states that "[t]he sexual harassment did not stop following [Plaintiff's] complaints to management," and R&R management "did nothing" in response to her complaints. (ECF No. 48-15 at 3.)

## C. Retaliation and Wrongful Termination (Claims 3 and 7)

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show: "(i) that [she] engaged in protected activity, (ii) that [her employer] took *adverse action* against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (alterations in original) (emphasis added) (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). Likewise, for Plaintiff to establish a *prima facie* case of wrongful termination under Title VII, Plaintiff must show that: "(1) she is a member of a protected class; (2) she suffered an *adverse employment action*; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012) (per curiam) (emphasis added).

R&R argues that, as to both the retaliation and wrongful termination claims, Plaintiff "has not produced any competent evidence that she suffered an adverse employment action," (ECF No. 47 at 17.) In response, Plaintiff curiously argues that her "constructive discharge provides the basis of [her] claim of retaliation under Title VII [and] wrongful termination." (ECF No. 48 at 18.) Plaintiff then proceeds to present arguments in support of a constructive discharge claim. However, as previously noted, (*see supra* n.1), Plaintiff's constructive discharge claim has been dismissed from this action pursuant to the parties' Stipulation of Dismissal. (ECF No. 40.) Consequently, the Court will not consider Plaintiff's arguments regarding the dismissed constructive discharge claim.

As to the retaliation and wrongful termination claims, the Fourth Circuit has held that "[a]dverse employment actions include any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). Here, the record is devoid of evidence showing that, at any point during Plaintiff's employment, she experienced a reduction in pay, demotion in position,[9] suspension,[10] or reassignment of duties.[11] Moreover, while Plaintiff stated in Charge 2 that she was discharged in retaliation for filing a previous charge, (ECF No. 48-14 at 1), the evidence, including Plaintiff's own evidence, reflects that Plaintiff voluntarily resigned from R&R, via email dated February 25, 2015, (ECF No. 34-24; *see also* ECF No. 46). As R&R argues, an employee's voluntary resignation does not, as a matter of law, constitute an adverse employment action. *See Honor*, 383 F.3d at 186 (holding that retaliation and wrongful termination claims could not proceed because "a reasonable jury could find that [plaintiff] voluntarily resigned his employment").

Based on the lack of evidence in the record to support a finding by a reasonable jury that Plaintiff suffered an adverse employment action, the Court concludes that Plaintiff's

---

[9] *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (characterizing a decrease in pay and demotion as adverse employment actions).

[10] *See Biolchini v. Gen. Elec. Co.,* 167 F.3d 1151, 1154 (7th Cir. 1999) (recognizing that a one-week disciplinary suspension was an adverse employment action).

[11] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (explaining that a reasonable jury could conclude that plaintiff's reassignment to more arduous work responsibilities would constitute a materially adverse employment action).

retaliation and wrongful termination claims fail as a matter of law. R&R is, therefore, entitled to summary judgment on both claims.

## D. __Breach of Contract (Claim 4)__

R&R argues that it is entitled to summary judgment on Plaintiff's breach of contract claim "because [Plaintiff] resigned from her employment with R&R and, regardless, she was an at-will employee with no promise of a specific term of employment." (ECF No. 47 at 19.) The Court agrees, and further notes that Plaintiff fails to address this claim in her response brief.[12]

Notwithstanding Plaintiff's failure to offer an argument in response to R&R's position on this claim, the record clearly reflects that Plaintiff's employment with R&R was at-will. Upon commencement of Plaintiff's employment, the parties executed an Employment Contract, dated September 2, 2014, which specifically stated that "[e]mployee's employment under this Agreement shall be *for an unspecified term*." (ECF No. 34-11 ¶ 9 (emphasis added).) Thus, Plaintiff was an at-will employee whose employment could be terminated by either party, at any time, with or without cause. *See Feamster v. S. Ry. Co.*, 49 F.R.D. 26, 27 (M.D.N.C. 1969) ("Under the law of North Carolina it is well settled that a contract of employment for an indefinite period is terminable at the will of either party, with or without cause, and that no damages can be recovered for its cancellation." (citing *Howell v. Commercial Credit Corp.*, 78

---

[12] A party's failure to address an issue in its opposition brief concedes the issue. *See Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (concluding that "[i]n Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address . . . his hostile work environment claim [and in so doing], Plaintiff concedes that he has not stated a hostile work environment claim").

S.E.2d 146 (N.C. 1953))); *accord Strickland v. MICA Info. Sys.*, 800 F. Supp. 1320, 1325–26 (M.D.N.C. 1992).

The record shows that, on February 25, 2015, Plaintiff sent an email to Karl Robinson stating that she was giving R&R two weeks' notice of her resignation. (ECF No. 34-24 at 1.) Although the parties appear to dispute whether Plaintiff voluntarily resigned or was terminated, such a dispute is not material for the purposes of this claim[13] since the at-will nature of the parties' employment relationship permitted either party to terminate the employment at any time, with or without cause. The Court, therefore, finds that a reasonable jury could not find that R&R breached its employment contract with Plaintiff. Accordingly, R&R is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

## IV.  CONCLUSION

The Court concludes that the only claims for which Plaintiff has exhausted her administrative remedies are those claims against Defendant arising from: (1) the alleged harassing conduct of Dennis Robinson and Stacy Wilcox; and (2) Plaintiff's allegations that she informed Defendant of the alleged harassing conduct and Defendant allegedly failed to take corrective action. Thus, the Court has subject matter jurisdiction over those claims. The Court lacks subject matter jurisdiction over any other claim of sexual harassment by any other person alleged in the Complaint, due to Plaintiff's failure to exhaust her administrative remedies with respect to such claims.

---

[13] *See Liberty Lobby, Inc.,* 477 U.S. at 248 (explaining that, on summary judgment, only disputes over material facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Therefore, of the seven claims for relief outlined in Plaintiff's Complaint, two of which were dismissed by stipulation of the parties, the Court concludes that only two of the remaining five claims for relief survive Defendant's Motion for Summary Judgment. The claims that survive are the First Claim (Unlawful Discrimination based on Sex), and the Second Claim (Unlawful Discrimination Based on Hostile Work Environment and Sexual Harassment). These claims survive, however, only to the extent that they are based on the alleged harassing conduct of Dennis Robinson. With respect to claims against Defendant arising out of the alleged harassing conduct of Stacy Wilcox, such claims fail, as a matter of law, because the alleged conduct does not satisfy the severe or pervasive element of a hostile work environment claim.

The Court further concludes that Defendant is entitled to summary judgment as a matter of law with respect to Plaintiff's Third Claim (Retaliation), Fourth Claim (Breach of Contract) and Seventh Claim (Wrongful Termination).

For the reasons stated herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (ECF No. 42) is GRANTED IN PART AND DENIED IN PART. The motion is hereby DENIED as to Plaintiff's First Claim (Discrimination Based on Sex) and Second Claim (Hostile Work Environment Based on Sexual Harassment), only to the extent that these claims against Defendant are based on the alleged harassing conduct of Dennis Robinson.

IT IS FURTHER ORDERED that Defendant's motion is hereby GRANTED as to: (1) claims against Defendant arising from the alleged conduct of Stacy Wilcox, which fail as a

22

matter of law; and (2) claims against Defendant arising from the alleged conduct of any other person named in the Complaint, due to lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that Defendant's motion is hereby GRANTED as to Plaintiff's Third Claim (Retaliation) and Seventh Claim (Wrongful Termination) under Title VII, as well as Plaintiff's Fourth Claim (Breach of Contract).

This, the 16th day of March, 2017.


_____/s/ Loretta C. Biggs_____
United States District Judge